IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOY FAMILY LIMITED
PARTNERSHIP,

    *Plaintiff*,

    v.

                                    Civil Action No. ELH-12-3741

UNITED FINANCIAL BANKING
COMPANIES, INC., *trading as*
THE BUSINESS BANK,

    *Defendant*.

## MEMORANDUM OPINION

The Joy Family Limited Partnership (the "Partnership"), plaintiff, has sued United Financial Banking Companies, Inc. ("United Financial"), "trading as The Business Bank," defendant, for injurious falsehood (Count I); fraud (Count II); violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code (2005 Repl. Vol., 2012 Supp.), §§ 14-201 *et seq.* of the Commercial Law Article ("C.L.") (Count III); violation of the Maryland Consumer Protection Act ("CPA"), C.L. §§ 13-201 *et seq.* (Count IV); and abuse of process (Count V). In sum, the Partnership accuses defendant of intentionally clouding the title to a condominium in Ocean City, Maryland, of which the Partnership is the equitable title holder, in order to coerce the Partnership to pay a debt owed by the holder of legal title to the property. Plaintiff seeks damages in an unspecified amount, along with attorneys' fees and costs, and asserts subject matter jurisdiction founded on diversity of citizenship. *See* 28 U.S.C. § 1332(a).

Two motions are now pending. United Financial has filed a Motion to Dismiss (ECF 12), asserting that plaintiff has sued the wrong defendant, that diversity jurisdiction is lacking, and

that plaintiff's complaint fails to state claims upon which relief can be granted. The Partnership has filed a Motion for Leave to File Amended Complaint ("Motion to Amend") (ECF 16), seeking to substitute the proper defendant. Both motions have been fully briefed and can be resolved without a hearing. *See* Local Rule 105.6.[1] For the reasons that follow, I will grant the Motion to Amend. With the identity of the proper parties thereby established, I conclude that diversity jurisdiction is lacking. Accordingly, I will grant the Motion to Dismiss on jurisdictional grounds, and dismiss the suit for lack of subject matter jurisdiction, without reaching the merits.

### Factual Background

The property at issue is a condominium located at 1203 Edgewater Avenue, Unit B, in Ocean City, Worcester County, Maryland ("Unit B"). Richard Joyeusaz, who is not a party to this case, purchased Unit B in 2004 for $211,800. Members of the Partnership own Unit A, which is adjacent to Unit B. Although the precise composition of the Partnership is not disclosed in the record, it is apparent that Richard Joyeusaz's father, Edward Joyeusaz, has a position of authority in the Partnership.[2]

Richard's friend, John Simmonds, contributed some money toward Richard's purchase of Unit B in 2004.[3] Richard also procured financing for the purchase of Unit B through a mortgage

---

[1] I have reviewed the Motion to Dismiss (ECF 12), the Partnership's Opposition (ECF 13), defendant's Reply (ECF 15), the Partnership's Motion to Amend (ECF 16), and defendant's Opposition to the Motion to Amend ("Amend Opp.") (ECF 17). The Partnership did not file a reply in support of the Motion to Amend, and the time for it to do so has elapsed. *See* Local Rule 105.2(a); Fed. R. Civ. P. 6.

[2] To avoid confusion, I will hereafter refer to the father and son by their first names.

[3] Although Mr. Simmonds was not listed on the purchase deed to Unit B, plaintiff alleges that Richard considered Simmonds a "partial owner" of the condominium. Complaint ¶ 7.

loan in the amount of $158,850 from The Business Bank, a Virginia financial institution.[4]  He also incurred a second mortgage on Unit B, in the amount of $48,000, with another lending institution.  *Id.* ¶ 8.

Three years later, in late spring 2007, Richard decided to sell Unit B.  *Id.* ¶ 9.  Because the members of the Partnership who own Unit A "desired to exercise some degree of control over the use" of Unit B, the Partnership offered to purchase Unit B from Richard.  On June 1, 2007, Richard and the Partnership executed a Sales Contract for Unit B.  *See* Sales Contract, Ex. A to Complaint (ECF 1-1).  Edward signed the Sales Contract on behalf of the Partnership, purporting to act as its "General Partner."  *See* Sales Contract at 5-6.[5]  The Sales Contract provided for a deposit of $35,000 and a total sales price of $225,000.  According to "Addendum #1" to the Sales Contract, *see* Sales Contract at 6, the parties agreed that, although not listed on the title, Mr. Simmonds was an "equal Owner" of Unit B with Richard; that the Partnership would "take over" the monthly payments on The Business Bank mortgage and pay off the second mortgage; and that settlement of the Sales Contract would occur within five years of the date of ratification.

Edward had a longstanding business relationship with The Business Bank.  Complaint ¶ 10.  In June 2007, Edward visited The Business Bank's office in Tyson's Corner, Virginia to discuss with The Business Bank's management the Partnership's intended purchase of Unit B.  *Id.*  Edward met with the branch manager, Larry Baker, and his assistant, Danny Sisowath, and

---

[4] The relationship between United Financial and The Business Bank is discussed, *infra*.

[5] As I will discuss, *infra*, plaintiff states in the complaint that its general partner is a Maryland limited liability company named JFP, LLC.  Complaint ¶ 2.  It is not clear whether this discrepancy is a result of a change in the membership of the Partnership between the events at issue and the filing of the complaint, or an inaccuracy in either the complaint or the Sales Contract.

explained that the Partnership "would not purchase the Condominium without the Bank's board of director's approval of the transaction." *Id.* ¶ 11. Edward sought assurances that the purchase would not result in a default of The Business Bank's loan to Richard. According to plaintiff, Baker and Sisowath confirmed that the sale would not trigger a default, and approved the transaction. *Id.*

Edward then directed The Business Bank to withdraw $100,000 from the Partnership's accounts at The Business Bank and to pay that amount toward The Business Bank mortgage on Unit B, reducing the outstanding $147,000 principal obligation on the mortgage to a balance of $47,000. *Id.* ¶ 12. In addition, the Partnership paid the $35,000 deposit due under the Sales Contract to Richard and Mr. Simmonds in two equal shares of $17,500, in the following manner: the Partnership paid Mr. Simmonds $15,200, after deducting $2,300 for repair costs from Simmonds' $17,500 share, and applied Richard's $17,500 share to other debts that Richard owed the Partnership. *Id.* ¶ 13. The Partnership fully paid off the second mortgage on Unit B on September 4, 2008, after Edward negotiated a reduced prepayment with the mortgage lender. *Id.* ¶ 15. And, the Partnership paid all of the successive monthly payments on the mortgage owed to The Business Bank, and paid off The Business Bank mortgage in September 2010. *Id.* ¶ 14. Thus, in total, the Partnership paid $221,850 to various entities in connection with its purchase of Unit B.

In the meantime, Richard and his wife had borrowed money from The Business Bank to establish a nail salon in Virginia (the "Virginia Loan"). *Id.* ¶ 17. Unit B was not collateral for the Virginia Loan. The Virginia Loan went into default at the end of 2009 or the beginning of 2010, and on February 4, 2010, The Business Bank obtained a judgment against Richard and his

wife in Loudoun County, Virginia, where they lived, in the outstanding amount on the Virginia Loan of $45,567.40, plus interest (the "Virginia Judgment"). *See id.* ¶ 18; Ex.A to Motion to Dismiss (ECF 10-2). The Business Bank tried and failed to collect on the Virginia Judgment, and Richard initiated a personal bankruptcy proceeding. *Id.* ¶ 19. Subsequently, on an occasion when Edward visited the Bank, either Mr. Baker or Mr. Sisowath, the bank officials, requested that Edward pay the Virginia Judgment. Edward refused on the ground that neither he nor the Partnership had incurred or benefited from the Virginia Loan. *Id.* ¶ 20.

Richard did not disclose Unit B as an asset in his bankruptcy proceeding. According to plaintiff, this was because Richard had sold Unit B to the Partnership in the transaction discussed above. *Id.* ¶ 21. However, plaintiff asserts, on information and belief, that The Business Bank learned during the bankruptcy proceeding that Richard also owed the Internal Revenue Service approximately $1 million, and that the IRS would likely file a notice of tax lien against Richard in Worcester County, Maryland, where Unit B is located. *Id.* ¶ 23. On March 24, 2010, The Business Bank recorded the Virginia Judgment against Richard in the Circuit Court for Worcester County, thereby placing a lien on Unit B. *Id.* ¶ 24.[6] A month later, on April 26, 2010, the IRS filed a notice of tax lien against Richard in the Circuit Court for Worcester County in an amount in excess of $1 million. *Id.* ¶ 25.[7]

---

[6] Under Maryland law, "[i]f indexed and recorded as prescribed by the Maryland Rules, a money judgment of a court constitutes a lien to the amount and from the date of the judgment on the judgment debtor's interest in land located in the county in which the judgment was rendered . . . ." Md. Code (2013 Repl. Vol.), § 11-402 of the Courts & Judicial Proceedings Article ("C.J."). The Maryland Uniform Enforcement of Foreign Judgments Act, C.J. §§ 11-801 *et seq.*, permits a creditor holding a judgment issued by a court of another state to file the judgment in a Maryland circuit court, whereupon the "filed foreign judgment has the same effect . . . as a judgment of the court in which it is filed." C.J. § 11-802(b).

[7] The Partnership states that it "will seek to vacate this tax lien as it applies to the

The Partnership claims that The Business Bank's lien should not attach to Unit B because the Partnership became the equitable owner of Unit B upon execution of the Sales Contract. *Id.* ¶ 26.[8] It contends that The Business Bank recorded the Virginia Judgment in Worcester County and encumbered Unit B with the intent to pressure the Partnership or Edward to pay off Richard's obligation under the Virginia Loan and the Virginia Judgment. Plaintiff posits that this could be the only reason that The Business Bank recorded the Virginia Judgment in Worcester County. It reasons that The Business Bank knew that Richard had no property in Worcester County, other than bare legal title in Unit B, and knew that the Partnership was the equitable owner of Unit B. *Id.* ¶ 27. As the Partnership sees it, by recording the Virginia Judgment in Worcester County, The Business Bank hoped to "coerc[e] the Joy Family and/or [Edward] to pay the debt owed by [Richard] despite the Bank's actual knowledge that neither was in any way responsible for [Richard's] debt, or to attempt to sell the Condominium to collect [Richard's] debt to the bank." *Id.*

Additional facts are included in the Discussion.

## Discussion

### A. Proper Defendant and Motion to Amend

The first ground for dismissal asserted in the Motion to Dismiss is intertwined with the Motion to Amend. In the Motion to Dismiss, United Financial claims that "The Business Bank"

---

Condominium." Complaint ¶ 25.

[8] In Maryland, under the doctrine of equitable conversion, "'the contract purchaser of realty becomes the equitable owner of the property, while the vendor retains a bare legal title.'" *Knight v. Princess Builders, Inc.*, 393 Md. 31, 49, 899 A.2d 156 (2006) (quoting *Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794 (1985)). "One result of the doctrine is that a judgment entered against the vendor after the contract has been made does not become a lien on the realty." *Watson*, 304 Md. at 60, 497 A.2d 794.

is a separate business entity in its own right, rather than a mere trade name for United Financial. Therefore, United Financial asserts that plaintiff has sued the wrong party, and that all of the Partnership's claims should be dismissed on that basis. Further, although United Financial did not file a separate motion for sanctions, it asked the Court to impose monetary sanctions on plaintiff's counsel, pursuant to Fed. R. Civ. P. 11, in the form of the reasonable attorneys' fees and costs incurred in defending the suit, because it sent a letter to plaintiff's counsel after suit was filed, asserting that plaintiff had sued the wrong defendant, and claimed "Plaintiff's attorney did not respond." Motion to Dismiss at 11; *see* Letter of Feb. 5, 2013, from Lash to Astrachan, Ex.B to Motion to Dismiss (ECF 10-3).

In its Opposition to the Motion to Dismiss, plaintiff states that "The Business Bank" is listed in the records of the Virginia State Corporation Commission ("SCC") as a fictitious name and as a trade name for an entity that is a predecessor in interest of United Financial. *See* Opposition at 6-7. Plaintiff submitted with its Opposition electronic printouts from Virginia state business records supporting its contentions. *See* Ex.A & B to Opposition (ECF 13-1 & 13-2). And, plaintiff provided a printout from The Business Bank's website stating that United Financial is the "parent company of The Business Bank." Ex.C to Opposition (ECF 13-3). Moreover, plaintiff correctly observed that United Financial did not "submit any documentation or statement under oath supporting its assertion that 'The Business Bank' is not a trade name under which it operates." Opposition at 7.

Finally, the Partnership has refuted United Financial's assertion that plaintiff's counsel did not respond to the letter from defendant's counsel. It submitted a copy of a letter from plaintiff's counsel to defense counsel dated February 6, 2013, one day after the letter sent by

defendant's counsel. *See* Letter of Feb. 6, 2013, from Doty to Lash, Ex.D to Opposition (ECF 13-4). In that letter, plaintiff's counsel stated that United Financial's counsel had "not identif[ied] the entity that [United Financial] contends should be named as a defendant in this case," and asked defense counsel to "provide the name and state of incorporation of the entity that [United Financial] contends should be named as a defendant . . . , together with supporting documentation . . . ." *Id.* According to plaintiff, defendant's counsel never responded.

Along with its Reply, United Financial submitted a Certificate of Good Standing from the Virginia SCC, dated March 12, 2013, issued under the seal of the SCC and the signature of its clerk, stating that The Business Bank was incorporated under Virginia law in 1982 and is in good standing. *See* Ex.A to Reply. It explained that the printouts from electronic records submitted by plaintiff's counsel "refer[red] to a third and completely unrelated corporation with a similar but distinguishable name." Reply at 2.

Thereafter, plaintiff filed its Motion to Amend, observing that, in its Reply, United Financial had "for the first time provided documentation that [The Business Bank] is in fact a separate legal entity and not a trade name, contrary to the SCC records the [Partnership] found online during its pre-filing investigation." Motion to Amend ¶ 3. Based on that documentation, plaintiff sought leave to amend its complaint, pursuant to Fed. R. Civ. P. 15(a)(2), to substitute The Business Bank as the sole defendant, in lieu of United Financial. That is the only change in plaintiff's proposed Amended Complaint (ECF 16-1).

In its Opposition to the Motion to Amend, United Financial assented to the amendment of the complaint, but asserted that "a diligent inquiry would have discovered that [The Business Bank] and United Financial are separate and distinct legal entities." Amend Opp. ¶ 12.

Therefore, as a condition of granting leave to amend, it has asked the Court to award attorneys' fees and expenses "incurred by United Financial as a result of Plaintiff's failure to dismiss United Financial from this case upon being informed that [The Business Bank] is a separate legal entity." *Id.*

Under Fed. R. Civ. P. 15(a)(2), a court should "freely give leave" to amend a pleading "when justice so requires." Given that all parties are now apparently in agreement that The Business Bank, as a separate legal entity, is the proper defendant to this suit, there is no basis to withhold leave to amend. Therefore, the Motion to Amend will be granted.

However, I see no merit whatsoever in defendant's request for sanctions.[9] Plaintiff filed suit against United Financial after its investigation reasonably indicated that "The Business Bank" was a trade name for United Financial. Indeed, the two companies are apparently related. First, The Business Bank is listed as a corporate affiliate of United Financial in United Financial's corporate interest disclosure statement, filed pursuant to Local Rule 103.3 (ECF 11). Second, the two companies share the same address. Although United Financial informed plaintiff's counsel that it is a separate legal entity from The Business Bank, it provided no documentation in support of that assertion, despite the request for such information from plaintiff's counsel, until it filed its Reply in support of its Motion to Dismiss.

Ordinarily, where an amended complaint is filed that substitutes the defendant, it might be appropriate to consider as moot any substantive defenses asserted in a motion to dismiss previously filed by the improperly named defendant. Nevertheless, a defendant is not always "required to file a new motion to dismiss simply because an amended pleading was introduced

---

[9] Indeed, it is defendant's counsel who veered close to sanctionable conduct by misrepresenting to the Court that plaintiff's counsel had not responded to his initial letter.

while [its] motion was pending.  If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."  6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed. 2010, 2012 Supp.); *accord Slumber Parties, Inc. v. Cooper*, Civ. No. RDB-12-791, 2012 WL 2915110, at *4 (D. Md. July 16, 2012).

Although The Business Bank is a separate legal entity from United Financial, it is clear that the two companies are related, as noted.  Moreover, the Motion to Dismiss has been fully briefed, and the Amended Complaint contains precisely the same allegations as the original complaint.  Therefore, there is no reason not to consider on behalf of The Business Bank the grounds asserted by its corporate affiliate, United Financial, in its Motion to Dismiss.

This view is sound for yet another reason.  The Motion to Dismiss asserts, in part, a lack of subject matter jurisdiction.  Because the Court has an independent obligation to be assured of its own jurisdiction, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010), it is appropriate to consider the possible absence of subject matter jurisdiction at the earliest feasible opportunity.  Accordingly, I will construe the remaining contentions in the Motion to Dismiss as if asserted by the proper defendant, The Business Bank, and addressed to the Amended Complaint.[10]

### B.  Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  In this case, plaintiff asserts that the Court possesses subject matter jurisdiction on the

_____

[10] Hereafter, references to "the complaint" refer to the Amended Complaint (ECF 16-1).

basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332(a). The Motion to Dismiss challenges the existence of diversity jurisdiction.

Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigation is between "citizens of different States." 28 U.S.C. § 1332(a)(1). The Motion to Dismiss challenges only whether plaintiff has satisfied the amount-in-controversy threshold of $75,000.

For the reasons explained below, I agree with defendant that plaintiff has failed to establish diversity jurisdiction, based on the amount-in-controversy requirement. Pursuant to the Court's "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," *Hertz Corp.*, 559 U.S. at 94, I also conclude that plaintiff fails adequately to plead that the suit involves citizens of different states. Accordingly, I will grant the Motion to Dismiss on jurisdictional grounds and will not resolve defendant's substantive challenges to plaintiff's causes of action.[11]

A challenge to subject matter jurisdiction may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional

---

[11] As noted, some counts of plaintiff's complaint assert violations of Maryland state statutes. The parties are in agreement that, pursuant to the choice of law principles of Maryland, as the forum state, the tort claims in plaintiff's other causes of action are also governed by the substantive law of Maryland, pursuant to the doctrine of *lex loci delicto*. *See, e.g.*, *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) ("A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941), and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)); *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010) (stating that, under Maryland choice of law principles, tort claims are governed by *lex loci delicto*, *i.e.*, the law of the state where the alleged harm occurred).

allegations of the complaint [are] not true,'" or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001). The Motion to Dismiss presents a hybrid challenge: defendant contends that the allegations of the complaint fail to establish diversity jurisdiction and that the underlying facts do not support diversity jurisdiction.

*1. Amount in Controversy*

"'It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted), *aff'd sub nom. McBurney v. Young*, ___ U.S. ___, 133 S. Ct. 1709 (2013). Ordinarily, this means that "'[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction.'" *Id.* (citation omitted). Thus, when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.), *cert. denied*, 558 U.S. 875 (2009).

With respect to the amount-in-controversy requirement of the diversity jurisdiction statute, the Supreme Court has issued two edicts that are seemingly in tension. On the one hand, in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), the Court said: "The rule governing dismissal for want of jurisdiction . . . is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288-89 (emphasis added) (internal footnotes omitted). In other words, "if, from the face of the

pleadings, it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed . . . , the suit will be dismissed." *Id.* at 289 (emphasis added).

On the other hand, in *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936), the Supreme Court confronted a complaint that was "destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000," which was then the statutory amount-in-controversy threshold, and the "particular allegations" of the complaint shed no further "light upon that subject." *Id.* at 181. In that circumstance, the Court said that the plaintiff "must allege in his pleading *the facts* essential to show jurisdiction." *Id.* at 189 (emphasis added). The Court continued: "The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* . . . . If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *Id.* (emphasis added).

In *Momin v. Maggiemoo's International, LLC*, 205 F. Supp. 2d 506 (D. Md. 2002), Judge Catherine Blake of this court observed that, "[i]n determining whether an amount in controversy is sufficient to confer jurisdiction," courts have applied "one of two legal standards depending on whether the damages are specified or unspecified in the complaint," *id.* at 509, thereby harmonizing the teachings of *McNutt* and *Saint Paul Mercury*.[12]

---

[12] *Momin* arose in the context of removal, and thus the burdens were reversed: the defendant, as the party asserting diversity jurisdiction, bore the burden to establish jurisdiction, and so the defendant sought to controvert the plaintiff's claim that the amount in controversy was *lower* than the jurisdictional threshold. However, there is no reason to conclude that Judge Blake's analysis is any less valid in a situation in which the plaintiff's assertion of jurisdiction is challenged by the defendant.

Under the first standard, "[w]here a plaintiff claims a *specific amount* in damages" greater than the $75,000 threshold, the opponent of jurisdiction must controvert the plaintiff's assertion to a "'legal certainty.'" *Id.* (emphasis added) (citation omitted). As the Fourth Circuit stated in *JTH Tax, Inc. v. Frashier*, 624 F.3d 635 (4th Cir. 2010): "If the plaintiff *claims a sum* sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed.'" *Id.* at 638 (emphasis in *JTH Tax*) (citation omitted). In other words, a jurisdictional challenge to a specifically alleged amount in controversy will fail if "*a fact finder could legally conclude*, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (emphasis added). In that circumstance, a defendant "seeking dismissal of [a] diversity action[ ] for lack of a sufficient amount in controversy, must . . . shoulder a heavy burden"; the opponent of jurisdiction "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *JTH Tax*, 624 F.3d at 638 (citation omitted).

However, where "a plaintiff's complaint does not allege a specific amount in damages," a different standard applies: the proponent of jurisdiction must "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Momin*, 205 F. Supp. 2d at 509-10. As Judge Blake explained, "[i]n such cases, '[a] lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer.'" *Id.* at 510 (citation omitted). This is consistent with the "well-pleaded complaint" rule, under which the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing

*McNutt*); *accord El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 752 (7th Cir. 2013) ("The fact that the plaintiff *alleged* an amount in controversy in excess of $75,000 . . . does not establish that this *is* the amount in controversy.") (emphasis in original).

In this case, the only allegation contained in the complaint that addresses the amount in controversy is a conclusory statement, tracking the language of 28 U.S.C. § 1332(a), *i.e.*, that "the amount in controversy exceeds $75,000, exclusive of interest and costs." Complaint ¶ 4. The complaint contains no allegations of fact to support this assertion, however. Thus, this case is governed by the second standard identified in *Momin*: in the face of defendant's challenge, plaintiff must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold of $75,000.[13]

Notably, although the Partnership alleges that it "paid approximately $221,850 to purchase" Unit B from Richard, Complaint ¶ 16, and that Richard purchased Unit B for $211,800 in 2004, *id.* ¶ 7, the value of the condominium is not the measure of the amount in controversy in this action. Rather, as defendant points out, a venerable line of Supreme Court precedent indicates that, in a challenge regarding the existence or validity of a lien or other encumbrance on real property, the amount in controversy is measured by the value of the lien, not the value of the real property that the lien encumbers. *See, e.g.*, *Lion Bonding & Sur. Co. v. Karatz*, 262 U.S. 77, 85-86 (1923) (holding that jurisdiction was lacking where plaintiff sought to have defendant's "debt [to plaintiff] declared a first lien on [plaintiff's] assets," and the value

---

[13] Notably, plaintiff does not have to prove that it has actually sustained damages in excess of the jurisdictional threshold; it need only show that damages potentially in excess of the threshold are in controversy. As the Eighth Circuit explained in *Kopp*, *supra*, 280 F.3d at 885, the "jurisdictional fact . . . is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are: In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it."

of the debt was less than the jurisdictional threshold; stating that the "case is not of that class where the amount in controversy is measured by the value of the property involved in the litigation"); *Ross v. Prentis*, 44 U.S. (3 How.) 771 (1845) (holding that jurisdiction was lacking in suit seeking to enjoin marshal's sale of real property in execution of judgment against property owner, where "only matter in controversy between the parties is the amount claimed on the execution," which was below the jurisdictional threshold, regardless of the fact that the "property is worth much more than the sum required to give jurisdiction"); *Farmer's Bank of Alexandria v. Hooff*, 32 U.S. (7 Pet.) 168 (1833) (dismissing, for want of jurisdiction, a suit for decree of sale of lot pursuant to deed of trust securing loan in amount below jurisdictional threshold, and stating that, although the lot "is worth more" than the jurisdictional minimum, the "real matter in controversy is the debt claimed in the bill; and though the title of the lot may be inquired into incidentally, it does not constitute the object of the suit").

More recent decisions of the federal appellate courts are in accord. *See, e.g.*, *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212-13 (1st Cir. 2012) (stating that, "'where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount,'" and holding that jurisdiction was satisfied regardless of whether the loan amount was calculated by the face value of the loan or the outstanding balance, where "both the face value and the amount still due exceed the $75,000 threshold") (citation omitted); *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 451-52 (7th Cir. 1999) (stating that diversity jurisdiction was satisfied, in challenge to enforceability of mortgage liens, where "the value of the two mortgage interests at issue, each . . . was substantially in excess of the jurisdictional minimum").

Nowhere in the complaint does plaintiff allege the amount of the Virginia Judgment, which establishes the value of the putative lien on Unit B that is at issue. However, defendant states, and plaintiff does not dispute, that the value of the Virginia Judgment is $45,567.40. Obviously, this falls far short of the jurisdictional minimum of $75,000. The Partnership contends, however, that the amount in controversy includes not only the value of the lien on Unit B, but also "both actual and punitive damages caused by the Bank's wrongful imposition of a lien, knowing that it had no right to so do." Opposition at 8. The problem with plaintiff's position is that the Partnership has not alleged any facts to suggest that it is entitled to punitive damages or, indeed, that it has suffered recoverable damages at all, in any amount, from defendant's alleged course of conduct.

To put the insufficiency of plaintiff's allegations as to damages in perspective, I pause to discuss the law with respect to eligibility for punitive damages generally, as well as the elements of each of the five state law causes of action that plaintiff asserts, with particular attention to the requirements for damages under each cause of action.[14]

It is well established that "punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (stating that punitive damages must be considered in calculating the amount in controversy). However, a proponent of diversity jurisdiction "must do more than 'point to the theoretical availability of certain categories of damages'" to satisfy the amount-in-controversy requirement. *McMillian v.*

---

[14] My conclusions with respect to the availability of damages might seem to suggest that plaintiff's claims are flawed on the merits. However, I do not reach the merits of plaintiff's claims in this opinion.

*Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (citation omitted). Indeed, the Fourth Circuit has counseled that "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983).

In *Saval*, a 1983 case involving a tort claim under Maryland law, the Fourth Circuit recognized that "no matter what the theory of recovery, punitive damages cannot be recovered absent malice." *Id.* at 1033; *see, e.g.*, *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 265, 841 A.2d 828, 837 (2004); *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000, 1003-04 (1997); *Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995); *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992); *French v. Hines*, 182 Md. App. 201, 248-50, 957 A.2d 1000, 1026-28 (2008). The *Saval* Court ruled that, when a plaintiff's complaint demands punitive damages but asserts claims upon which punitive damages cannot be awarded as a matter of law, the claim for punitive damages cannot be aggregated to satisfy the jurisdictional threshold. *See Saval*, 710 F.2d at 1033-35. The Fourth Circuit relied upon the law of Maryland, which then permitted an award of punitive damages only if either actual malice or implied malice was shown. *Saval*, 710 F.2d at 1033. Since *Saval*, the Maryland Court of Appeals has restricted the availability of punitive damages still further, and punitive damages can now be awarded under Maryland law only in cases of "actual malice," which means "ill will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose." *Scott*, *supra*, 345 Md. at 29 n.3, 690 A.2d at 1004 n.3. *Accord Tierco Md., Inc. v. Williams*, 381 Md. 378, 414 n.29, 849 A.2d 504, 526 n.29 (2004); *George Wasserman & Janice Wasserman Goldsten Family*

*LLC v. Kay*, 197 Md. App. 586, 636-37, 14 A.3d 1193, 1222-23 (2011); *see generally French*, *supra*, 182 Md. App. at 248-50, 957 A.2d at 1026-28.

Turning to the individual counts of plaintiff's complaint, Count I asserts a claim for "injurious falsehood." "It is firmly established that . . . injurious falsehood (sometimes known as disparagement or slander of title)" is an "actionable tort[ ] . . . long . . . recognized in Maryland." *Rite Aid Corp. v. Lake Shore Investors*, 298 Md. 611, 617, 471 A.2d 735, 738 (1984) (citing *Gent v. Lynch*, 23 Md. 58, 63 (1865)). The Maryland Court of Appeals discussed the elements of the tort in *Beane v. McMullen*, 265 Md. 585, 291 A.2d 37 (1972), drawing heavily on the description of the tort in PROSSER, LAW OF TORTS (4th ed. 1971). From the discussion in *Beane*, 265 Md. at 607-09, 291 A.2d at 49 (quoting PROSSER), the following elements of the tort, as it respects real property, can be distilled: (1) that the defendant published a statement or other "matter derogatory to the plaintiff's title to his property, or its quality"; (2) that the "'disparaging statement [or other matter was] false'"; (3) that the falsehood was "communicated to a third person"; (4) that the defendant acted with "'malice,'" which the *Beane* Court stated would be satisfied if the defendant acts (a) "'for a spite motive, and out of a desire to do harm for its own sake,'" (b) "'for the purpose of doing harm to the interests of the plaintiff in a manner in which he is not privileged so to interfere,'" or (c) "'when the defendant knows that what he says is false, regardless of whether he has an ill motive or intends to affect the plaintiff at all'"; and (5) "'that the publication has played a material and substantial part in inducing others not to deal with [the plaintiff], and that as a result [the plaintiff] has suffered special damage.'"

In *Rite Aid*, the Maryland Court of Appeals further elucidated the required element of "special damage," stating, 298 Md. at 625-26, 471 A.2d at 742:

Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons. As a general principle, pecuniary loss in this context includes that from the impairment of vendibility or value by the disparagement and the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by the disparagement. Whether other various losses qualify as special damages depends upon the character of the defamation and the evidence adduced in each case. Pecuniary loss may be established by proof of the conduct of specific persons, or proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify. Emotional distress and bodily harm resulting from the disparagement are strictly excluded. Exemplary or punitive damages are recoverable in appropriate circumstances.

The *Rite Aid* Court also discussed the "appropriate circumstances," *id.* at 626, 471 A.2d at 742, that would support an award of punitive damages. "The first condition for recovery of punitive damages is that there be an award of compensatory damages." *Id.* at 626, 471 A.2d at 743. And, because "the existence of special damages . . . is an element of the cause of action," an "award of nominal damages will not suffice to permit an assessment of punitive damages." *Id.* "The second condition necessary to support punitive damages is that the tortious act be committed with actual malice." *Id.* at 627, 471 A.2d at 743.[15]

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular theory, the plaintiff must establish the elements of fraud "by clear and convincing evidence." *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

---

[15] It is not entirely clear what distinction there is, if any, between the "malice" that is an element of the tort of injurious falsehood and the "actual malice" that is a prerequisite to an award of punitive damages. None of the three alternative definitions of the "malice" element discussed in *Beane* would appear to constitute mere "implied malice" (*i.e.*, gross negligence), as opposed to "actual malice," under the punitive damages standard established in *Owens-Illinois, Inc. v. Zenobia*, *supra*, 325 Md. 420, 601 A.2d 633.

The fraudulent misrepresentation theory of the tort (which is the garden variety of fraud and often is described simply as "fraud") is relevant here. In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
>
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). The "misrepresentation must be made with the deliberate intent to deceive," *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)), and the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

In *Ellerin*, the Maryland Court of Appeals addressed the availability of punitive damages in an action for fraud, holding that "the elements of the tort of fraud or deceit in Maryland, *where*

*the tort is committed by a defendant who knows that his representation is false*, include the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages." *Ellerin*, 337 Md. at 235, 652 A.2d at 1126 (emphasis added). In other words, "a person's actual knowledge that his statement is false, coupled with his intent to deceive another by means of that statement, constitute the 'actual malice' required for the availability of punitive damages." *Id.* at 240, 652 A.2d at 1129. Thus, "a plaintiff satisfies the element of 'actual malice' and supports a punitive damage award when the evidence shows that the defendant committed fraud with 'actual knowledge of falsity, coupled with [an] intent to deceive.'" *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 265, 841 A.2d 828, 837 (2004) (quoting *Ellerin*, *supra*). But, "[n]egligence or misjudgment, 'however gross,' does not satisfy the knowledge element." *VF Corp.*, 350 Md. at 704, 715 A.2d at 193.

Counts III and IV of the complaint allege, respectively, violations of the MCDCA and the CPA. The MCDCA prohibits certain enumerated actions by a debt collector in "collecting or attempting to collect" an "alleged debt arising out of a consumer transaction." C.L. §§ 14-201(b), 14-202; *see also* C.L. § 14-202(1)-(9) (enumerating prohibited actions). It authorizes a civil action against a collector "for any damages proximately caused by" a violation of the MCDCA, "including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." C.L. § 14-203. The CPA prohibits certain "unfair or deceptive trade practices." C.L. § 13-301. It contains a private right of action allowing a plaintiff "to recover for injury or loss sustained by him as the result of a practice prohibited by" the CPA. C.L. § 13-408(a). "One of the "unfair or deceptive trade practices" specifically enumerated and prohibited by the CPA is a violation of the MCDCA. *See* C.L. § 13-301(14)(iii). Plaintiff's

CPA claim is expressly predicated only on the alleged violation of the MCDCA. *See* Complaint ¶ 43. Thus, Counts III and IV stand or fall together.

In *Citaramanis v. Hallowell*, 328 Md. 142, 151, 613 A.2d 964, 968 (1992), the Maryland Court of Appeals held that, because the CPA's private right of action is limited to recovery of "injury or loss sustained," C.L. § 13-408, a "plaintiff pursuing a private action under the CPA [must] prove actual 'injury or loss sustained'" in order to prevail. *Accord McDaniel v. Baranowski*, 419 Md. 560, 587-88, 19 A.3d 927, 943 (2011). Because the MCDCA's private right of action is similarly predicated on recovery of "damages proximately caused by" a violation of the statute, C.L. § 14-203, there is no reason to conclude that the Maryland courts would reach a different interpretation of the MCDCA. Thus, actual damages are a necessary element of a claim under either statute. Moreover, punitive damages are categorically not available as relief under either the MCDCA or the CPA. *See Hoffman v. Stamper*, 385 Md. 1, 49, 867 A.2d 276, 304 (2005) (stating that "[p]unitive damages may not be awarded in an action brought under [C.L.] § 13-408," the provision for private enforcement of the CPA); *Spence v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1995) ("[P]unitive damages are not available for violations of the [MCDCA]."); *Cilento v. B.T. Credit Co.*, 424 F. Supp. 1, 1-2 (D. Md. 1977) (same).

Count V of the complaint alleges the tort of abuse of process. To establish a claim for abuse of process, the plaintiff must prove (1) willful use of process for an illegal purpose, after process has been issued; (2) with an underlying ulterior motive; and (3) resulting damages. *Humphrey v. Herridge*, 103 Md. App. 238, 653 A.2d 491 (1995); *see also Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 650, 547 A.2d 1105, *cert. denied sub nom. Green and Vernon*

*Green Assocs. v. Allen*, 314 Md. 458, 550 A.2d 1168 (1988). The tort occurs only when a person uses criminal or civil process for an illegal purpose after process has issued. *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 511, 471 A.2d 297 (1984); *Allen*, 76 Md. App. at 650, 547 A.2d 1105. "The mere issuance of the process itself, however, is not actionable, even if it is done with an 'ulterior motive' or 'bad intention.' Rather, '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required . . . .'" *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 530, 852 A.2d 1029, 1044 (2004). Moreover, with respect to the element of damages, "the injuries contemplated by this particular tort (and an indispensable element of it) are limited to an improper arrest of the person or an improper seizure of property." *Herring v. Citizens Bank and Trust Co.*, 21 Md. App. 517, 536, 321 A.2d 182 (1974); *accord One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 45-46, 694 A.2d 952 (1997) ("The plaintiff [must] establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process.").

However, "[m]alice, actual or implied, is not an element of the tort of abuse of process." *Palmer Ford, Inc.*, 65 Md. App. 390, 401, 500 A.2d 1055, 1061 (1985). Therefore, in order to be eligible for an award of punitive damages with respect to an abuse of process claim, a plaintiff must go beyond the elements of the tort and prove, additionally, that the defendant acted with actual malice. *See id.* (reversing jury award of punitive damages on abuse of process claim where there was no evidence of malice).

Plaintiff's complaint fails to allege facts showing that the Partnership incurred special damages (*i.e.*, pecuniary damages), or any other category of actual damages (such as damages for emotional distress, assuming that a business entity could experience such damages). Notably,

the complaint is devoid of any factual allegation that the Partnership sought to sell Unit B to a third party or to consummate the Sales Contract with Richard, and that the recordation of the Virginia Judgment in Worcester County prevented such a transaction from occurring. Nor does the Partnership allege that it actually paid Richard's debt to The Business Bank, in satisfaction of the Virginia Judgment, as it contends defendant sought to coerce it to do. Moreover, in its Opposition, plaintiff does not identify any facts suggesting that it has been damaged, other than an assertion with respect to its entitlement to attorneys' fees.

In connection with the recoverability of "special damages" in an action for injurious falsehood, the Maryland Court of Appeals said in *Rite Aid*, *supra*, 298 Md. at 625, 471 A.2d at 742, that such damages include damages "from the impairment of vendibility or value by the disparagement and the expense of measures reasonably necessary to counteract the publication, *including litigation to remove the doubt cast upon vendibility or value by the disparagement*." (Emphasis added.) Plaintiff seizes on the emphasized language to argue that it is entitled to recover its attorneys' fees in this action as special damages. However, in none of plaintiff's causes of action does it seek declaratory or injunctive relief, or assert an action to quiet title to Unit B, so as to actually remove the cloud on the title to Unit B allegedly created by the recordation in Worcester County of the Virginia Judgment. Rather, the causes of action that plaintiff asserts generally call for damages remedies, and the *ad damnum* clauses in each of the counts of plaintiff's complaint seek only damages in unspecified amounts, attorneys' fees, and costs. Thus, this action is not one that could "remove the doubt cast upon vendibility or value by the disparagement." *Rite Aid*, 298 Md. at 625, 471 A.2d at 742. If plaintiff had asserted a declaratory or quiet title claim in this case, in addition to its injurious falsehood claim, perhaps

success on the injurious falsehood claim would entitle it to fee shifting in this action. Or, if plaintiff had brought a declaratory or quiet title action in another forum, perhaps plaintiff could recover its attorneys' fees from that proceeding by way of an injurious falsehood claim in this action. But, neither the complaint nor plaintiff's Opposition alleges that such a proceeding has been instituted.

Moreover, plaintiff has failed to establish any entitlement to punitive damages because, for each of plaintiff's causes of action, punitive damages either are not available or are foreclosed by plaintiff's failure to allege facts suggesting an entitlement to actual damages. As discussed, punitive damages cannot be awarded on a CPA claim or a MCDCA claim. Thus, punitive damages could only be aggregated to satisfy the amount-in-controversy requirement if they were available for one of plaintiff's tort causes of action. But, certain types of actual damages are necessary elements of each of the three tort causes of action, and so plaintiff's failure to allege facts suggesting that it has incurred the types of damages at issue (or, indeed, any damages) is fatal to its punitive damages claim.

With respect to the injurious falsehood claim, I have already reviewed plaintiff's failure to plead special damages. Because the "first condition for recovery of punitive damages" in a suit for injurious falsehood "is that there be an award of compensatory damages," *Rite Aid*, 298 Md. at 626, 471 A.2d at 743, punitive damages are not available, as a matter of law, with respect to Count I. As to Count II, the fraud claim, the Maryland Court of Appeals had recently said, in connection with a claim of fraud: "In general, there must be an underlying compensatory damages award with respect to a particular injury in order for a fact-finder to award punitive damages for that injury." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 162 59 A.3d 1016, 1026

(2013) (citing *Caldor, Inc. v. Bowden*, 330 Md. 632, 662, 625 A.2d 959 (1993)).[16]  With respect

to the third tort claim, Count V, alleging abuse of process, plaintiff's compensatory damages

claim (and hence, its punitive damages claim) is weaker still, because plaintiff clearly does not

allege "an improper arrest of the person or an improper seizure of property," which are the only

"injuries contemplated by this particular tort."  *Herring*, *supra*, 21 Md. App. at 536, 321 A.2d

182.

In sum, plaintiff has failed to establish that the amount in controversy in this action

exceeds the jurisdictional threshold of $75,000.[17]

### 2. *Diversity of Citizenship*

In addition, I conclude, *sua sponte*, that plaintiff had failed to satisfy the other prong of

diversity jurisdiction, *i.e.*, that the action is one between "citizens of different States."  28 U.S.C.

§ 1332(a)(1).  This is because the Partnership has failed to allege facts sufficient to establish its

state citizenship.  This is yet another basis to conclude that the Court lacks diversity jurisdiction

over this action.[18]  I explain below.

---

[16] An award of nominal damages can, in some circumstances, serve as an award of compensatory damages on which to found a punitive damages award.  *See, e.g.*, *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 226, 66 A.3d 1152, 1181 (2013).  However, the Maryland Court of Special Appeals has stated that, because actual compensatory damages are an element of a fraud claim, "nominal damages are not available in an action for fraud."  *Frazier v. Castle Ford, Ltd.*, 200 Md. App. 285, 296 27 A.3d 583, 589 (2011), *aff'd in part, rev'd in part on other grounds*, 430 Md. 144, 59 A.3d 1016 (2013).

[17] Although, as a formal matter, I do not reach the substantive merits of plaintiff's causes of action, it follows almost inescapably from plaintiff's failure to allege facts supporting any recoverable compensatory damages that, if I were to reach the merits, I would conclude that the complaint fails to state a claim upon which relief can be granted, because compensable damage is a required element of each of plaintiff's causes of action.

[18] "Ordinarily, when faced with . . . ambiguous pleading of diversity jurisdiction, the Court would alert the parties to the apparent jurisdictional defect and give them an opportunity to

According to the complaint, plaintiff is organized under Maryland law as a limited partnership. *See* Complaint ¶ 2. For purposes of diversity jurisdiction, courts look through the form of such a business entity to the citizenship of all of the members of the partnership. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-96 (1990). Moreover, "'[t]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be.'" *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003) (citation omitted). The complaint asserts that its "general partner, JFP, LLC, is a Maryland limited liability company, comprised of ALJ, LLC and ELJ, LLC, each a Maryland limited liability company." Complaint ¶ 2. Notably, the state citizenship of limited liability companies (LLCs) is governed by the same rule that applies to partnerships: the citizenship of an LLC "is determined by the citizenship of all of its members." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004)). However, the Partnership provides no information as to its other partners, nor does it provide any information as to the membership of ALJ, LLC and ELJ, LLC, except to say that "the constituent partners and members of these entities are citizens of the State of Maryland." Complaint ¶ 2. This conclusory statement is insufficient to establish plaintiff's citizenship.

As to the Partnership itself, although it has identified its general partner, the Supreme Court in *Carden* "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the

cure it before dismissing the case." *Allstate Ins. Co. v. Cherry*, Civ. No. ELH-11-2898, 2012 WL 1425158, at *4 (D. Md. Apr. 23, 2012). I do not do so here with respect to plaintiff's defective pleading of its citizenship only because plaintiff has failed, after a full opportunity to litigate the issue, to establish satisfaction of the amount-in-controversy requirement.

entity's members," 494 U.S. at 195, and held specifically that a limited partnership's citizenship cannot be determined "solely by reference to the citizenship of its general partners, without regard to the citizenship of its limited partners." *Id.* at 192.

Plaintiff's bare assertion that "the constituent partners and members of [its member] entities are citizens of the State of Maryland," Complaint ¶ 2, is also insufficient to establish its citizenship. "A party's mere allegation of diversity cannot satisfy its burden of establishing the district court's jurisdiction." *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 616 (4th Cir. 2004), *rev'd on other grounds*, 546 U.S. 81 (2005). "When jurisdiction is challenged, courts generally do not accept the *carte blanche* naked allegations of diverse citizenship or bald assertions of jurisdictional facts." *Id.* at 617; *accord Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533-34 (7th Cir. 2007) ("We hope to make it clear once and for all . . . that [a party's] naked declaration that there is diversity of citizenship is never sufficient. . . . [A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well. . . . [T]he court [cannot] take on faith the lawyer's blanket declaration that the partners are citizens of another state.").

### Conclusion

For the foregoing reasons, I will dismiss this action, without prejudice, for lack of subject matter jurisdiction.[19] An Order implementing my rulings follows.

---

[19] The Court does not address (indeed, it lacks jurisdiction to resolve) defendant's challenges to the sufficiency of plaintiff's substantive pleading, including the asserted defenses that plaintiff's injurious falsehood claim is time-barred; that, with respect to plaintiff's fraud claim, defendant's alleged representations were not false and plaintiff's reliance on them was unreasonable; that the transactions at issue were not "consumer transactions" within the ambit of

Date:   August 28, 2013                          _____/s/_____

                                                 Ellen Lipton Hollander
                                                 United States District Judge

---

the MCDCA and CPA; and that plaintiff has failed to allege that process was actually issued or
that it was misused following its issuance.